IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PETER VARLEY,** | )<br>) |
| Plaintiff | )<br>) |
| vs. | )   Civil Action No.<br>)   1:11-cv-507  (RLW)<br>) |
| **FEDERAL BUREAU OF PRISONS,** | )<br>) |
| Defendant, | )<br>) |

**MEMORANDUM OPINION AND ORDER**

In this Freedom of Information Act ("FOIA") case, 5 U.S.C. § 552, there are three pending motions [1] which revolve around a *pro se* prisoner's right to access to his own Sentence Monitoring Computation Data form, containing descriptive codes that "reference" his conviction. For the reasons set forth below, the Court finds that Plaintiff is entitled to obtain a hardcopy of the requested document.

**I.  FACTS**

Pursuant to FOIA, Plaintiff Peter Varley, who is incarcerated in an Elkton, Ohio federal facility, sought disclosure from the Defendant Federal Bureau of Prisons ("BOP") of his Sentence Monitoring Computation Data ("SMCD") form relating to an earlier 1991 conviction. In response to his request, the BOP sent Varley a hardcopy of the SMCD, but informed him that

---

[1] The three motions are as follows: 1) "Defendant's Motion for Summary Judgment" (Doc. 10); 2) "Plaintiff's Cross-Motion for Summary Judgment" (Doc. 21); and 3) Defendant's Motion to Dismiss (Doc. 25).

some information had been redacted because the document:

> contain[ed] third-party information and information intended for staff use only. Release of this information could reasonably be expected to endanger the life or physical safety of any person. The statutory basis for this withholding is [FOIA Exemption 7,] 5 U.S.C. § 552(b)(7)(F). [2]

(Doc. 10-2, Def's Mot. for Summ. J. at Ex. 3, July 13, 2011 letter.)

The agency's position changed several times after litigation began, however. Despite the reference to third-party information in the disclosure letter, during the early stages of this litigation the BOP asserted that the redacted information consisted of "descriptive codes referencing Plaintiff's conviction." (*See* Doc. 10, Def.'s Summ. J. at 7.) Release of such information to Varley himself, contended the BOP, could "reasonably be expected" to endanger Varley's life if the nature of his conviction were known within the inmate population. (*Id.*)

During the course of this litigation, it became apparent that Varley also sought a copy of the Judgment entered in that earlier 1991 criminal action. According to Varley, he contacted the court where he was previously convicted and was informed that it no longer had a copy of the document. (Doc. 14, Pl.'s Summ. Resp. at Ex. A, Varley Decl. ¶ 9.) Although the agency originally provided Varley with a redacted Judgment for the same reasons as it redacted the SMCD, the BOP later changed course once again and eventually placed an <u>unredacted</u> copy of both the Judgment and the SMCD in his prison file. (Doc. 18, Def.'s Summ. J. Reply at 3, n.3; Doc. 18-2, Def.'s Summ. J. at Ex. 3, Shepas Decl. ¶ 2.) However, the BOP still refused to provide Varley with hardcopies of the documents, citing Exemption 7 as well as an internal

---

[2] FOIA exemption 7 allows an agency to withhold "information compiled for law enforcement purposes" if, *inter alia*, disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

policy prohibiting inmates from possessing certain documents.  (*See* Doc. 18, Def.'s Summ. J. Reply at pp. 2-5) (citing Doc. 10-2, Def.'s Mot. for Summ. J. at Ex. 4, Federal Bureau of Prisons Program Statement 1351.05 at ECF pp. 14-15.)  Despite this policy, an Elkton case manager eventually provided Varley with unredacted copies of two relevant documents.  First, a case manager gave Varley an unredacted copy of the Judgment and Varley has notified the court that he wishes to dismiss his claims with respect to that document.  (Doc. 20, Pl.'s Supplement ¶ 1.) Second, a case manager provided Varley with an unredacted copy of the SMCD for his current 2007 sentence.  (Doc. 14, Pl.s' Summ. J. Resp. at p. 10; *id*. at Ex. A, Varley Decl. ¶ 10.)[3] Because the BOP has only allowed him to view, but not obtain a hardcopy of his unredacted SMCD for his 1991 conviction, Varley still seeks to proceed with his claim.

## II.  SUMMARY JUDGMENT STANDARD & REVIEW OF FOIA CASES

Summary Judgment under Federal Rule of Civil Procedure 56 is appropriate if the pleadings and evidence on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Lardner v. F.B.I.*, No. 03–cv–0874 (RCL), ___ F. Supp. 2d ___, 2012 WL 1109728, at *3 (D.D.C. 2012) (citations omitted).  In order "[t]o successfully challenge an agency's showing that

---

[3] Although Varley does not specifically state that the SMCD for the 2007 sentence was "unredacted," he does assert that the document contained "the very information the BOP is now averring would be too risky to provide to Plaintiff."  (Doc. 15, Pl.'s Response to BOP's SOF at p. 5; *see* Doc. 14, Pl.s' Summ. J. Resp. at p. 10; *id*. at Ex. A, Varley Decl. ¶ 10.)  The BOP has not contradicted Varley's assertion.

it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. United States Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citing *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989)).  The agency has the burden of "demonstrating that the documents requested are exempt from disclosure under the FOIA." *Newport Aeronautical Sales v. Department of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) (citations and alterations omitted).

### III.  ANALYSIS

"[O]nce the records are produced in a FOIA case the substance of the controversy disappears and becomes moot since the disclosure the suit seeks has already been made." *See Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 19 (D.C. Cir. 1984) (alterations, internal quotations and citations omitted.).  Because the agency has allowed Varley access to the unredacted SMCD document, the BOP now argues it has fulfilled its obligations under FOIA and, therefore, the matter is moot.  (Doc. 25, Def.'s Mot. to Dismiss at pp. 2-4.)  The agency relies on an internal policy to withhold a hardcopy of the document from Varley.

BOP Program Statement 1351.05 prohibits prisoners "from obtaining or possessing photocopies of their PSRs, SORs,[4] or other equivalent non-U.S. Code sentence documents (e.g., D.C., state, foreign, military, etc.)" because these types of documents often "contain information regarding the inmates' government assistance, financial resources, [and] community affiliations."

---

[4] A PSR is a "Presentence Report."  An SOR is a "Statement of Reasons" found in the inmate's criminal Judgment.  (*See* Doc. 10-2, Def.'s Mot. for Summ. J. at Ex. 4, Program Statement 1351.05 at ECF pp. 14-15.)

(Doc. 10-2, Def.'s Mot. for Summ. J. at Def's Ex. 4, Program Statement 1351.05 at ECF pp. 14-15.)  The justification for this policy is a "documented an [sic] emerging problem where inmates pressure other inmates for a copy of their PSRs and SORs to learn if they are informants, gang members, [or] have financial resources."  *Id*.  According to the policy statement, "[i]nmates who refuse to provide the documents are threatened, assaulted, and/or seek protective custody.  Likewise, inmates providing the PSR and SORs containing harmful information are faced with the same risks of harm."  *Id.*

Although SMCDs are not specifically listed in the policy, the BOP interprets "other equivalent non-U.S. Code sentence documents" as including the SMCD.  (Doc. 29, Def.'s Mot. to Dismiss Reply at p. 8 n.5.)  According to the BOP, the SMCD contains "a descriptive code with reference to Plaintiff's conviction and if known by the inmate population, would potentially cause the Plaintiff to be harmed."  (Doc. 10-1, Herbin-Smith Decl. ¶ 12.)  Indeed, the BOP asserts that inmates found guilty of the crime for which Varley was convicted "are at a heightened threat of physical harm if known to other inmates."  (Doc. 25-2, Herbin-Smith Decl. ¶ 15.)  Therefore, the BOP asserts that like the PSRs and SORs, prison officials prohibit inmates from possessing hardcopies of their SMCD forms.  The BOP primarily relies on *Martinez v. Bureau of Prisons,* 444 F.3d 620 (D.C. Cir. 2006), as support for withholding the SMCD hardcopy pursuant to the policy.

In *Martinez*, the Court upheld the BOP's decision to withhold hardcopies of an inmate's PSR from him.  444 F.3d at 624-25.  The BOP had allowed the inmate to review the documents and take notes on them, but had withheld the actual papers based on an agency policy that prohibits inmates from obtaining copies of the PSR.  *Id*.  Finding that the plaintiff had been

provided a meaningful opportunity to review the PSR, the Court held that FOIA did not entitle Plaintiff to have copies of the document. *Id*. at 625.  The Court went on to note that the agency's policy "sets forth reasons, based on concerns about inmate safety, for prohibiting inmates from keeping copies of their PSRs in their cells and reflects a judgment regarding prison administration that the court would be loath to second-guess." *Id*.

In *Sample v. Bureau of Prisons*, 466 F.3d 1086, 1089 (D.C. Cir. 2006), the Court of Appeals warned against giving *Martinez* "too broad" of a reading.  In *Sample*, the court explained that *Martinez* did not hold that the BOP could ignore the statutory requirements of FOIA, and that "*Martinez* was limited to whether FOIA required BOP to permit an inmate to possess records in his cell." *Id*. at 1089.  Instead, the *Sample* court explained *Martinez* by noting that the BOP could prohibit the inmate from possessing a copy of the PSR because prison regulations specifically prohibited the possession of PSRs, and such policies "ought not be subject to judicial second-guessing." *Id.*  Thus, neither *Martinez* nor *Sample* supports the prohibition on Varley possessing a hardcopy of the 1991 SMCD, unless the BOP demonstrates that a BOP inmate safety policy specifically covers the document.

While *Martinez* involved the same policy as the one at issue in the present case, the two cases are distinguishable.  First, *Martinez* involved a PSR, which is specifically covered under the policy, while the SMCD is not.  Moreover, the stated reasons behind the policy do apply to the instant case, like they did in *Martinez*.  Specifically, the policy prohibits inmates from possessing PSRs and SORs because they "may contain "information regarding the inmates' government assistance, financial resources, [and] community affiliations[,], which if disclosed might endanger the inmate's physical safety. (Doc. 10-2, Def.'s Mot. for Summ. J. at Ex. 4,

Program Statement 1351.05 at pp. 14-15). Significantly, the policy statement also states "[t]his prohibition applies only to the SOR portion of an inmate's Judgment in a Criminal Case. The rest of the Judgment remains releaseable unless circumstances or policy dictate otherwise." *Id.* at 15. It is undisputed that an inmate's Judgment lists his offense of conviction, thus it is plain that the BOP policy does not consider specific information about an inmate's crime of conviction as the type of information which, if disclosed,"might endanger the inmate's physical safety" within the scope of the policy.   Notwithstanding this BOP policy, the BOP justifies prohibiting Varley from possessing the unredacted SMCD based upon a declaration of a BOP official stating that the SMCD "contains descriptive information with reference to Plaintiff's conviction, and if known by the inmate population would potentially case the Plaintiff to be harmed." Doc. 25-2, Second Harbin-Smith. Decl. ¶ 14.  There is no further explanation, and there is no evidence before the Court that the withheld portion of the SMCD contains the same or similar information as the PSR or SOR.[5]  Thus, there is no basis for the Court to hold that the redacted information contains information about "government assistance, financial resources, [and] community affiliations," which is the type of information that the BOP policy poses risks to inmate safety.  In sum, there is no evidence before the Court that the SMCD contains information that falls within the stated basis for the BOP policy, and consequently, *Martinez* does not control the outcome here.[6]

---

[5] The BOP claims that the SMCD differs "slightly" from the PSR, but the BOP does not explain this difference.  (*See* Doc. 29, Def.'s Mot. to Dismiss Reply at p. 8 n.5.)

[6] Finally, this Court is not persuaded by the BOP's reliance on *Oglesby v. United States Dep't of Army,* 920 F.2d 57, 69-71 (D.C. Cir. 1990), where our Circuit upheld an agency's decision to make documents available in its reading room, rather than provide the requester with copies.  The facts of that case were markedly different than those presented to the instant Court. *Oglesby* involved a request for documents that were "too numerous [for the agency] to search" and the requester had access to photocopying machines in the reading room. *See id*. at 70.

Without its policy statement upon which to rely, BOP is left to rely on FOIA's Exemption 7(F) to support withholding hardcopies of the documents from the Varley. Pursuant to Exemption 7(F), an agency may withhold "records or information compiled for law enforcement purposes," where release of the records or information "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "In reviewing claims under Exemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm." *Public Emp. for Envt. Responsibility v. United States Section Int.'l Boundary and Water Comm'n,* 839 F. Supp.2d 304, 327 (D.D.C. 2012) (citation omitted).

The record in the present case does not support a finding that there is a nexus between disclosure and any possible harm because the nature of Varley's conviction has already been disclosed. First, even though his Judgment contains information about the nature of Varley's crime, the BOP admits that it provided Varley with an unredacted hardcopy of that document. (Doc. 25, Def's Mot to Dismiss at p. 2; Doc. 25-1, Pitts Decl. ¶ 3.) The BOP explains its release of the Judgment by claiming that it contains different information than that found in the SMCD. (*See* Doc. 25, Def.'s Mot. to Dismiss at pp. 2, 8; Doc. 25-2, Second Harbin-Smith. Decl. ¶ 14.) According to the BOP's brief, unlike the Judgment, the SMCD contains "information that BOP has determined carries a risk of harm requiring the information to be withheld." (Doc. 25, Def.'s

---

Moreover, our Court of Appeals has also held that simply allowing a FOIA requester "access" to documents does not necessarily meet the agency's obligations under FOIA. *See, Perry v. Block*, 684 F.2d 121, 124 n.14, 125 (D.C. Cir. 1982) ("It is beyond peradventure . . . that a mere opportunity to inspect does not meet the disclosure responsibility imposed by the FOIA."); *see also Carson v. DOJ*, 631 F.2d 1008, 1015 n.30 (D.C. Cir. 1980) (expressing doubt, in *dicta*, that "the opportunity to view and take notes on [a] presentence report should be considered the equivalent of obtaining a copy of the report" pursuant to FOIA.)

Mot. to Dismiss at p. 8.)  As Varley points out however, the BOP's brief cites to a declaration by a prison official to support this claim, but the declaration contains no such statement.  (*See id*.; Doc. 25-2, Second Herbin-Smith Decl. ¶ 14.)  Thus, it is unclear why releasing a hardcopy of the Judgment was any less likely to endanger Varley than the SMCD.

Varley points to numerous other reasons why the nature of his conviction does not support the agency's decision to withhold a hardcopy of the SMCD.  Specifically, Varley claims: 1) that an Elkton case manager "provided to [Plaintiff]" a copy of the SMCD for his current 2007 sentence that includes "the very information BOP is now averring would be too risky to provide to Plaintiff"; [7] (2) that BOP officials at Elkton "routinely release to inmates" SMCD forms ; and (3) that approximately one-half of the 600 inmates at Elkton (which is a low security facility) are incarcerated for offenses similar to Varley's.  (Doc. 14, Pl.s' Summ. J. Resp. at p.10; *id*. at Ex. A, Varley Decl. ¶¶ 10-11; *id.* at Ex. A Varley Decl., Ex. 7; Doc. 15, Pl.'s Response to BOP's SOF at pp. 5, 7; Doc. 28, Pl's Resp. to Mot. to Dismiss at pp. 4-5, 13-14, Ex. 1, Varley Decl. ¶¶ 2,4.) The BOP has not disputed these claims by Varley.  Additionally,  the BOP has not disputed Varley's assertion that Elkton operates a sex offender treatment program and that inmates who must participate, "including [Plaintiff]," are notified of the time and location for the meeting by means of a publicly-posted list identifying the inmate's name and register number.  (Doc. 14, Pl.s' Summ. J. Resp. at Ex. A., Varley Decl. ¶ 11; Doc. 15, Pl.'s Resp. to BOP's SOF at p. 7.) Given this evidence, the BOP's reliance on Exemption 7(F) to protect Varley's safety by

---

[7] The Court has reviewed the docket reports for Varley's current conviction and his 1991 conviction, and the offenses are similar.  The BOP has not explained how Varley's safety would be any more compromised by the release of the prior SMCD.

withholding the SMCD is unfounded.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that under the unique circumstances of this case, Defendant failed to meet its FOIA obligations when it refused to provide Plaintiff with an unredacted hardcopy of his SMCD form. An Order accompanies this Memorandum.

**SO ORDERED.**
SEPTEMBER 30, 2012.

_____
Robert L. Wilkins
United States District Judge